Good morning, your honors. May I please record Catherine Dorsey on behalf of Defendants Appellants Fernandez and Vinzant, Sterling and Allen. The only remaining issue in Plaintiff's case here is whether a three-month delay in providing physical therapy to plaintiffs after it was already prescribed constituted deliberate indifference in violation of the Eighth Amendment. An issue in this appeal is whether the District Court erred in denying qualified community defendants on that claim. May I ask you first, the delay is variously described as 90 days or 30 days and in the last round it seemed that it was agreed as really 30 days because it was to be prescribed within 60. Does it matter how we characterize that? I think, your honor, in terms of trying to accept any disputed material facts, we generally refer to it as a three-month delay, but I think if you're right that the facts indicate that in reality it was a 30-day delay because the prescription recommended physical therapy occurred in 60 days and it was actually scheduled within about 90 days, so it was a 30-day delay, your honor, when it was recommended. Does getting part of the proper medical practices attendant to the cost of the treatment permit the provider of medical care to make a decision based on cost? I'm not aware that it does. Does it still happen? No, the facts that have been submitted to the court indicate that what happened here was that Dr. Fernandez recommended on November 28, 2005, he recommended that the plaintiff be provided a physical therapy evaluation to do 60 days, that then consistent with their prison's policy and guidelines, went to a utilization review committee which approved the recommendation and determined that that physical therapy evaluation should be scheduled to 60 days, that an outside provider which provides physical therapy to the prison scheduled that session, scheduled it within 60 days after when the utilization review committee approved the appointment, and then because the absence of the physical therapy provider, the outside provider, that appointment was then delayed by two more weeks because of the absence of the provider. Is it a subsidiary or relative agreement that these providers were looking at his release date? No, your honor. It's not. There's nothing in the facts submitted, there's nothing on that case where you actually consider the facts. The one thing that was submitted was that there was evidence that there was what was And as the defendants explained in their supplemental brief to the district court, that transfer form was not really about transfer. What it was was about the plaintiff's eligibility to when he was eventually released, to be released into a halfway house. And that form needed three signatures on it, and the third signature on that form happened to also come on November 28, 2005. And that was what was latched onto as potentially indicating that the plaintiff's transfer was being, his physical therapy was being delayed because of that transfer. But there is no evidence in the record that any of these defendants took any action to delay plaintiff's physical therapy because of a potential transfer after that physical therapy was recommitted by the doctor. Instead, it was offered to be provided, and it was plaintiff's suit himself who refused to attend that physical therapy evaluation appointment. Is the court following the scheduling of the appointment and then his decision not to attend because the conditions imposed in his view would be deleterious to his health? Is there anything on the record after that about anything to do with this case? In terms of rescheduling, there's nothing in the record about rescheduling appointment. I don't know if she asked for the appointment to be rescheduled. As far as the black box requirement about the restraints, he didn't want to wear to go to that appointment. As it was discussed before this court last time the case was on appeal, the plaintiff never challenged that black box requirement. And the magistrate, after the magistrate judge recognized that that was not, the defendant should be entitled to summary judgment as to the black box complaint because there was no showing that defendants had anything to do with that requirement or that they knew that plaintiffs would refuse to attend physical therapy because of that requirement. So there was no showing that defendants had any role with the black box requirement. And I believe on appeal before this court last time, plaintiffs conceded the black box claim was not part of this case anymore. So we would urge this court to enter summary judgment for defendants first on the ground that the law here was not clearly established, that even if the delay was a three-month deliberate delay, which we don't think perhaps is so, that such a delay in scheduling physical therapy once it was approved and while he was enduring pain would violate the amendment. Because in this case, there was, it wouldn't have been clear that such a three-month delay when it was a non-emergent physical therapy recommendation and that he was continued to receive ongoing and continuous treatment for pain. He saw the doctors over 40 times. So that he distinguished Hunt. And that's probably the best case. Hunt involved a three-month delay for dental care where a plaintiff received no medical treatment. He was in such pain he couldn't eat. And again, defendants knew that. And he was provided absolutely no medical care. That's clearly a much more urgent situation where a defendant can't eat. He was experiencing pain and got no treatment. Whereas here, it was he continued to receive treatment during that time continuously. And there wasn't, there's no evidence there was any urgency for treatment because the doctor here recommended an evaluation within 60 days, not through an emergency process. Could you discuss the significance of the procedural posture of this case? Yeah. The District Court denied a motion for reconsideration. And under the local rules, they set a pretty high bar for that. And we review that decision as opposed to a straight qualifying appeal with a lot more deference. So, would you address that? I mean, some districts do not even allow motions for reconsideration. And the Central District allows them only under strict circumstances. So we look at those kinds of motions on review with a lot more deference to the District Court than we would on the street if we're going to qualify the entity. First of all, I think when this court remanded to the District Court, the District Court indicated to defendants defendants requested an opportunity to file additional summary judgment briefing because this was the first time a claim about the delay in physical therapy for the 30 days or three months had really come to the forefront and become an issue in the case. Defendants asked to submit additional briefing, including briefing on the facts about why the reasons for the delay and defendants' involvement in it. And after the District Court agreed that defendants could provide such information, then the District Court went on to decide the case without allowing such information to be submitted. So we think that was, quote, error to not consider. I don't think we have a case that says it's an error to the District Court to refuse to allow additional submission on motions for reconsideration. Then maybe I'm wrong. Well, I think the question is... It's not fair as opposed to abuse of discretion. Yes, right, Your Honor. I think the best case, really, is the Supreme Court case in Mitchell before this, just force it in the fact that before a court can set a qualified immunity case for trial, the court has to give full consideration to qualified immunity defense. And part of a qualified immunity defense is an immunity to obviate the needs for trial if the facts can be shown that qualified immunity is, that the defendants are entitled to qualified immunity. And here, the District Court itself recognized that the facts about whether defendants were actually involved in delaying physical therapy and the reasons for the delay, it recognized those were relevant, but then refused to consider the evidence that would have allowed it to make that decision. And in part, I think it did that because it understood this court's order on remand to exclude it from considering that information, and I think that was the whole error, Your Honor. How do you balance that out with the District Court ability to manage its docket in a review of those decisions for abuse of discretion? Well, I think in general, of course, the District Court has authority to determine what evidence it needs, but when here it clearly recognized that that information, that evidence was relevant to its decision, but then still refused, and this court remanded for further proceedings on the cause and impact of the delay, and then this court refused to consider evidence that it itself recognized was relevant to that determination, we can tell that that was a legal error, Your Honors. Thank you, Your Honors. There are some time for Q and A. We would reserve one minute. The rest for everybody. Thank you. Thank you, Your Honors. I'm sorry to bring it up again. I'm Mr. Scott Hollinger, Gordon Scott Hollinger. I just, other than to concur with what counsel has previously said and argued, I would just like to point out the fact that I think there's a lot to be, a lot that's being said about this transfer and cost issues and that Bureau of Prisons still has custody over someone who goes into a halfway home, so they're still required to and do provide the physical therapy there, so it's not a matter of you get released and we don't have any responsibility for you anymore, and the cost is then pushed on to you. You're still in custody, and BOP still has a duty to ensure that you have medical care. Also, in HUD, I think the difference in HUD in this case is that, as far as my claim is concerned, as an associate warden, when somebody gets medical care, they have the right to follow the medical provider's direction, which is different than in HUD, which is that the person who's going to provide them any medical care for the administrative staff or correctional staff should know one way or another to go. So those are just the two issues that I wanted to raise, in addition to concurring with counsel, and I'm going to use the rest of the floor. Thank you. Have a good evening. Thank you, Your Honor. Before I begin, would it be permissible for me to reserve two minutes for rebuttals and cross-appeal? No, thank you. Did you just make a rebuttal and cross-appeal? I did. Thank you, Your Honor. May it please the Court. My name is Ruston Mink on behalf of the Appealing Cross-Appeal Department, and I'm here to present an appellate of prison officials appealed in two courts' denial of qualified immunity. That analysis hinges on the characterization of the right allegedly violated. Today I will first explain why, unevenly under the two courts' characterization of the right, prison officials are not entitled to qualified immunity. Second, I will explain why this court has no jurisdiction to review the characterization of the right. And lastly, I will explain why proper characterization of the right should include evenly after the prison officials knew that Dr. Zandt needed physical therapy and then refused to provide it. Would you agree that this, the care involved, is not urgent? I do not agree with that, Your Honor. The care may not have risen to the emergency level. I can neither agree nor disagree. I didn't. But the evidence shows that Dr. Zandt knew the care was urgent. He knew, he told Dr. Zandt that he needed physical therapy. The records, at least the documented record by the end of August 26th was when he told Dr. Zandt he needed physical therapy and he was referring for physical therapy. I find it urgent as a failure to care or delay care might result in either death or permanent injury. Yes. If anybody stepped back then it wasn't going to be very serious. But in this case, the doctors provided pain medication, right? They did provide pain medication. It was not terribly effective. It was effective in inferior periods of time, but not so long periods of time. So whether or not you agree that this is non-urgent, what's your best case or any case that says deliberate interference can determine if it is non-urgent and pain medication is provided? Well, actually, that's another part of the problem. No, Your Honor. The primary distinction, in fact, I'm qualified to be stating, that's truly dispositive in this case, and I understand the Airmen's trying to get away from it, trying to remove this from the record, but the distinction, in fact, in all of these cases is whether the care was urgent and denied or delayed that care for a non-medical reason. But what's your best case where the court, an appellate court, determined that the care required was non-urgent, where pain medication was provided, and the court said that constituted deliberate interference? Well, the Dermar v. O'Carroll from the third circuit is a specific medical therapy case where it wasn't going to be urgent. It was the same medication provided in that case. I don't remember them discussing whether pain medication was provided one way or the other. Even in Jet v. Pedder, though, they did provide the pain medication. And in that case, they specifically said it was not a case of different medical opinion. It was deliberate interference because the doctor here recognized that Jet v. Pedder needed the medical care and they didn't provide it. So in that case, he had a fractured thumb. They did provide pain medication, but they didn't send the thumb. They didn't send it to an orthopedist for evaluation. And because they knew that that was needed and failed to provide it, that was deliberate interference. And the district court's characterization of the right issue here was the deliberately delaying physical therapy for three months while the patient suffers pain. Let me go back to this three months because prior counsel had basically set it up that we were looking at a 30-day delay because we had the prescription to have physical therapy within 60 days, and there were another 30 days that expired before he had the appointment. And I'm having some trouble understanding how you can roll back from how the prior counsel characterized his case and from the facts of the prescription. Yes, Your Honor. We don't know the reason for the prior counsel's statement or argument. It contradicted. It contradicted what he was in counsel. Yes, but it contradicted what the briefs said. The briefs clearly identified an eight-month delay to physical therapy. Yeah, but people come up here and they say one thing in their briefs, and then they start asking questions, and they say, well, actually, I acknowledge this or I acknowledge that. So why do we now have a new round on the same topic? Yes, Your Honor, because we're trying to get the court to recognize that under a deliberately different standard in Kelly v. Board, this court explained that the proper inquiry here is the right allegedly violated. The court even said it's not the right that a defense replying to a commitment was violated. It's the right, as the briefs have alleged. And they even said that there's no inquiry into the merits of the allegations at this stage of the litigation. And, see, it has to be systematically alleged. The facts do matter. The facts do matter. Yes, Your Honor. So if there was a question about whether he needed physical therapy, and then physical therapy is prescribed, and then he declines to go to the appointment, I'm having some trouble understanding why that means deliberate indifference. Unless there's some other case that we're looking to, because we're also arguing, it's based on the backdrop of the Supreme Court cautioning all circuit courts to take a look at how they've looked at qualified immunities. So I'd appreciate your explanation of how you think this fits in with those cases. Yes, Your Honor. And so there's three parts to that. The first is the recognition of the need for physical therapy. The second part is the prescription for physical therapy. And then the third part is his refusal to attend. So let me just briefly introduce each of those three. The first one is deliberate indifference begins when a prison physician recognizes that medical care is needed and refuses to provide it. If the prisoner is suffering pain as a result. That is the classic example of deliberate indifference. Here, the doctor is recognized the need for physical therapy, at least by August 26th. But there's evidence involving by August 2nd. And Penzian has presented that evidence. And the doctor and also his administrators told Penzian he would get physical therapy. They were referring him to physical therapy, and then they told him you will not get physical therapy because you do not have enough time left on your sentence. And that he referred that with five months remaining on his sentence. That is classic deliberate indifference. The prescription doesn't actually have to be. So basically the doctor kept putting the can down the road as much as he could until February 28th. He just couldn't do it anymore. He had to fill out a prescription for physical therapy. But he filled it out for 60 days. And the district court even found that the MR-97, that the initial timeout 60-day schedule included had been based on deliberate indifference. The district court has already announced that the deliberate indifference began at least by November 28th. It's not the 60 days and then a 30-day delay. We're looking at, it's not really a factual finding. We're looking at a real issue. Yes, because at this stage we. At this stage we characterize it as the plaintiff has alleged. He has alleged a delay that was eight months. And the district court recognized, well, yes, he has alleged that an issue earlier. So it could be that even the November 28th date is based on deliberate indifference. And then we get to, 90 days later, we get to his scheduled appointment. And the guy was making a big case of that he's refusing to go. But he's explicitly on the prisoner's form, stated, I am not refusing physical therapy. He merely was refusing to be subjected to debilitating pain as a prerequisite for physical therapy. This is a prisoner, the aggressor prescribed a cane to walk because he couldn't walk because his pain was so great. For instance, where they try to keep weapons out of the hands of prisoners that have had to be able to walk around everywhere he goes in the prison, they know he can't walk without that cane, and they know that he can't carry the cane with the black box. If you look at the authorization forms, he's had twice off-site for dental appointments prior to this, and most of this was just three weeks prior, actually 20 days prior to his physical therapy appointment. We look at those forms, and those forms state, the earlier ones state, non-imaginary problem, normal escort procedures recommended, no history of escape, non-imaginary problem. And then black box is not required on those trips. But then you go just three weeks later, and now he's going for his physical therapy appointment, and instead of getting analysis on his management, all of a sudden he said he's arrested, his sentence states, inmate is scheduled for release on March 30th, exclamation point. And then black box is required. What do we do with the district court's ruling on their point? What does that say there? Well, the district court ruled that it's not an additional cost of action, and we're not trying to raise it as an additional cost of action for deliberate indifference. We're merely showing that this is evidence that the prison officials intentionally denied and delayed consent for physical therapy. And that's exactly what this whole series of facts shows. Not that we want to claim that the requirement of black box should be found to be deliberate indifference, just that the requirement for the black box is evidence that they were trying to deny and delay consent for physical therapy until he got out of prison and he was somebody else's problem. That is a classic example of deliberate indifference. And I'd just like to step back to discuss the pet interstitial issues. We know this is to be narrowly construed, but we believe that this is the perfect example of when it is appropriate. And this court, and particularly the court, identified three steps to a qualified immunity analysis. First is to identify the specific right allegedly violated. Second is to determine whether that right was clearly established. And third is the ultimate determination, whether any reasonable logic could claim the conduct to be lawful. These steps illustrate that a qualified immunity decision is tied directly to the characterization of the right at issue, and therefore the issues are inexplicably intertwined. The analysis is very similar to that used by this court in AFL-CIO versus INS, where the court found that class certification was inexplicably intertwined with the preliminary injunction review. And the court explained that because the preliminary injunction provided classified relief, the court could not uphold the preliminary injunction without upholding the class certification. Similarly here, a decision on qualified immunity will necessarily uphold whatever characterization is used for the right at issue, and therefore the issues are inexplicably intertwined. And additionally, this court has found that penetration is appropriate when it is necessary to ensure meaningful review, which this court explained in Melendrez v. Ohio, means that the issue implicates the very power that district court used to issue the rule of under consideration. The rule of under consideration here is the denial of qualified immunity. Inherent in the district court's power to decide upon qualified immunity is the district court's power to determine the right allegedly violated. And therefore, jurisdiction is appropriate under that standard as well. Now, we acknowledge the positional posture of the prior appeal in the magistrate's report and recommendation. But the magistrate erred in not considering the evidence that he had presented in the form of his medical journal. The magistrate found that there was no evidence of a delay prior to November 28th. And he found that the court has not relied on the medical journal to determine whether a genuine factual dispute exists because the journal was not informed of miscellaneous evidence. And that was a legal error that the judge did not waive objection to because at the district judge's stage of litigation, a proper standard is whether the information contained in the evidence could be admissible at trial. And if it can, then it should be considered to determine if there's a genuine factual dispute. On that point, the magistrate judge explicitly found that, yet this exhibit, meaning the medical journal, illustrates the additional facts that plaintiffs may be able to present in admissible form at trial, such as through his own testimony. That illustrates that he committed legal error in refusing to consider the evidence in the medical journal. And the medical journal clearly shows, since he has allegations, that criminal officials recognized the need for admissible therapy well before November 28th, told him he would receive admissible therapy, and then told him that he would not get admissible therapy because he didn't have enough time left on his sentence. Therefore, Pinzanti has shown in providing allegations that he's been equipped with evidence that delayed admissible therapy and began when those officials first recognized the need for admissible therapy. Pinzanti restricts his claim at this point to just a post-inscription period, the period after November 28th, with results that he manifested justice in not allowing Pinzanti to receive a remedy for the pain and suffering that he had suffered for four months in prison, while prison officials could tell you he would get an ortho-eval, could tell you he would get admissible therapy, and then not providing it to him. And not only that, but then telling him, we're not going to provide it to you because you don't have much time left. You can wait until you get out and you can get it on your own. And for these reasons, we ask this court to remand this case for Pinzanti's deliberately different claim, to enable us that he suffered pain and suffering at the hands of prison officials while they refused to provide the needed treatment that they recognized that he needed. Thank you. Thank you, counsel. We'll go to number 15 for rebuttal. Just three quick points, Your Honor. In response to Judge Hawkins' question about what cases plaintiffs would rely on, the two cases you cited, Durbert and Jett, in both of those cases, time was of the essence. Durbert relied on physical therapy for a stroke victim, was time of the essence in Jett, even though we don't think it was possible because it was decided after the events here. Also, the doctor ordered treatment within one week, and that was denied. Second, the only claim that is pending on this appeal that still exists in this case is the delay after physical therapy was provided or recommended. No court considering this case so far has found otherwise, and plaintiffs never, in fact, filed objections to the magistrate's report and recommendation, which found the claim, which was limited to after physical therapy was recommended. And before this court on appeal the last time, Plaintiffs' counsel made it very clear that the only claim they were concerned with was the delay after physical therapy was prescribed. The last point I want to make is that the black box claim is not part of this case. They conceded that on the last appeal to this court, and they also found, and the magistrate judge also found, that defendants had no role in the requirement of the black box. So even as I was showing evidence, the black box defendants had nothing to do with that requirement or had any knowledge that that would change it from going to physical therapy. And again, plaintiffs never filed any objections to the magistrate's findings in the report and recommendation. Thank you, Justice. Thank you all for your arguments this morning. The case is adjourned. We submit it for decision. And we'll be in recess.
judges: Hawkins, Thomas, McKeown